WESTERN AIRLINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Pacific Southwest Airlines, Intervenor.

No. 79–2380.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1981.
Decided April 8, 1981.

Jonathan Blank, Washington, D.C., on brief, for petitioner.

Alan R. Demby, Atty. Civil Aeronautics Bd., Washington, D.C., with whom Glen M. Bendixsen, Associate Gen. Counsel, Sanford M. Litvack, Asst. Atty. Gen., John J. Powers, III, J. Mark Manner, Attys., Dept. of Justice, Washington, D.C., on brief, for respondent.

Richard D. Mathias, Washington, D.C., with whom R. Bruce Keiner, Jr., Washington, D.C., on brief for intervenor.

Before JOHN W. PECK *, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, and MacKINNON and GINSBURG, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge JOHN W. PECK.

JOHN W. PECK, Senior Circuit Judge.

Amendments to a bilateral agreement between the United States and Mexico permitted American carriers to provide new air service from Los Angeles to four Mexican cities on the Pacific Coast (Route A.3) and new American carrier service between Los Angeles/San Diego and three Mexican cities on the Baja Peninsula (Route A.4). The bilateral agreement permitted the United States to divide the more lucrative A.3 route between two carriers. The A.4 route was reserved for a single carrier only. Four American air carriers actively sought assignment to the new routes.

Hearings were conducted by an administrative law judge (ALJ). The ALJ concluded that public convenience and necessity required that the new routes permitted by the bilateral agreement be authorized by the Civil Aeronautics Board (Board). In determining how the new routes should be assigned, the ALJ noted that there were theoretically a large number of possible ways to distribute the routes among the four competing carriers. However, the ALJ concluded that only seven alternatives were available as a practical matter. The ALJ's recommended decision discussed the advantages and disadvantages of these possible assignments of the new routes.

The ALJ concluded that the A.4 route should be assigned to Hughes Airwest. This conclusion was primarily based on the fact that Hughes Airwest was the only one of the four applicants to show "real interest" in serving the A.4 route and on the fact that Hughes Airwest's existing service routes to the Baja made it likely that Hughes Airwest could profitably and successfully service the A.4 route. Having determined that Hughes Airwest receive that route, the ALJ concluded that the potential benefits of competition between different

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1976).

American air carriers in providing service on the new routes dictated that Hughes Airwest not receive any authority for the A.3 route.

The ALJ further concluded that Pacific Southwest Airlines (PSA), intervenor in this appeal, should receive the two more lucrative destinations on the A.3 route, while Appellant Western Air Lines (Western) should receive the remaining two destinations of Route A.3. The ALJ determined that Western was most likely to succeed in providing service to the two less desirable destinations because of Western's existing services in the region. The two more lucrative spots on the A.3 route were given to PSA on the basis that a "newcomer" airline in the region would need that advantage if it were to be competitive. The ALJ selected PSA and Western for the A.3 route rather than the remaining applicant, United Airlines, because United's proposed fares were higher. However, because PSA's ability to begin the proposed service was subject to question, the ALJ assigned back-up status to United for PSA's routes, again in an effort to assure three-way competition among American air carriers on the new routes.

Disappointed with the routes recommended by the ALJ, Western petitioned the Board for discretionary review of the ALJ's recommended decision. The Board granted review only to the matter of back-up assignments, adopting the ALJ's recommendations as to primary air route assignments. In adopting the ALJ's route assignments, the Board found that the ALJ's decision was consistent with United States' policies of promoting competition on international routes whenever possible and of facilitating entry of carriers into new markets where those carriers have proven their willingness to offer relatively low fares. The Board determined that the ALJ's decision was reasonable in light of these policies and was supported by the evidence. The Board also affirmed the back-up assignment of United Airlines, and additionally assigned Western as back-up for Airwest's A.4 route and Airwest as back-up for Western's two A.3 destinations.

Still disappointed with the routes assigned to it, Western initiated this appeal from the Board's final decision. Western argues that the Board's decision is arbitrary and capricious, that it is unsupported by substantial evidence, and that the Board denied Western due process of law.

A careful examination of Western's arguments reveals that they are each based on an allegation that the Board failed to consider certain relevant evidence in making the route assignments. According to Western, the Board's decision was the predetermined result of a policy of blind adherence to a "notion" that air routes should be assigned in a manner that results in the greatest number of competitors in a given region. Western contends that the Board ignored other traditional factors considered in assigning international air routes and adopted the ALJ's decision simply because that decision resulted in assigning the maximum number of carriers to the new routes. Western asserts that the Board's failure to give "proper" weight to the traditional factors and to apply those factors to the evidence presented by Western makes the Board's decision arbitrary. Furthermore, Western contends that since the Board's decision was based solely on the preconceived notion that competition is best served by providing for the greatest number of competitors possible, that decision is without substantial basis in fact. Finally, Western asserts that the Board simply ignored Western's evidence related to traditional route assignment factors in order to reach the predetermined result of numerous competitors, and in doing so denied Western due process.

Each of Western's arguments depend upon a finding that the Board ignored relevant factors in assigning international air routes and relied solely on the factor of "competition." Furthermore, Western's arguments assume that the Board may not properly give controlling weight to the "competition" factor, but that the Board must consider and weigh other "traditional" factors such as proposed service, passenger benefits, fares, air traffic, and financial re-

sults. Because we cannot accept the first of these foundational prongs to Western's arguments, we do not reach the second, and we thus reject Western's arguments and affirm the decision of the Board.

In his lengthy recommended decision, the ALJ examined far more than the "notion" of competition. He did, in fact, discuss at length such factors as existing air traffic, the integration of proposed and existing routes, fare proposals, the apparent commitment of the applicants to the different proposed routes, and the potential for profit. Thus, it is simply not true that the ALJ ignored all other potential route assignment factors in an effort to "establish a religion" of competition, as Western asserted during oral argument. The fact that the ALJ assigned dominant weight to the factor of promoting competition does not invalidate his decision that was based on a carefully considered assessment of competition and of other traditional factors. Clearly, the relative weight to be given to various relevant considerations in assigning air routes is a matter for the Board's informed discretion. *See, Bowling Green-Warren County Airport Bd. v. C.A.B.*, 479 F.2d 553, 557 (6th Cir. 1973); *United Airlines v. C.A.B.*, 371 F.2d 221, 224 (7th Cir. 1967); *Outagamie County v. C.A.B.*, 355 F.2d 900, 906 (7th Cir. 1966). It was therefore within the ALJ's discretion to weigh "competition" more heavily than the other factors that he considered in assigning air routes.[1]

In considering Western's petition for discretionary review of the ALJ's decision, the Board reviewed the ALJ's findings and the reasons given for the route assignments that were recommended. The Board noted that the bases for the primary assignments recommended by the ALJ included not only the major consideration of promoting competition, but also considerations of the potential for profitable new service, integration with existing service, and fare proposals. The Board concluded that the

ALJ's decision was reasonable, supported by the record, and consistent with the existing policy of promoting competition on international routes to the extent possible. In thus examining and subsequently adopting the detailed fact finding and reasoning of the ALJ, the Board satisfied its obligation of acting rationally upon substantial evidence. *See, Continental Airlines, Inc. v. C.A.B.*, 443 F.2d 745, 758 n. 20 (D.C. Cir. 1971). Having thus supported its decision, the Board was not required to detail other factors that were not necessary to that decision, such as the details of Western's service proposal. *See, Delta Airlines v. C.A.B.*, 564 F.2d 592, 599 (D.C.Cir.1978); *Frontier Airlines v. C.A.B.*, 439 F.2d 634, 637 n. 4 (D.C.Cir.1971); *Outagamie County v. C.A.B.*, 355 F.2d 900, 906 (7th Cir. 1966). It is proper that this Court defer to the discretionary judgment of the Board in matters of air route assignments when, as in this case, that judgment is supported by rational explanation based on findings in the record. *Frontier Airlines et al. v. C.A.B.*, 602 F.2d 375, 379 (D.C.Cir. 1979).

For the reasons stated above the decision of the Civil Aeronautics Board is affirmed.

---

1. Indeed, the Board is directed by statute to consider maximum reliance on competitive market forces in interstate and *"overseas" [between the United States and its territories or possessions]* air transportation to be in the public interest, and to encourage such competi- tion. 49 U.S.C. §§ 1302(a)(4), 1302(a)(9), and 1302(a)(10). *Pursuant to the International Air Transportation Competition Act of 1979, Pub. L. No. 96–192, 94 Stat. 35, the directives of § 1302(a) now apply to foreign air transportation.*